# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2024 CA 0448

JAMIE LANDRY, ET AL.

VERSUS

STEPHEN LUCAS

Judgment Rendered: **NOV 2 2 2024**

\* \* \* \* \* \*

On Appeal from the Seventeenth Judicial District Court
In and for the Parish of Lafourche
State of Louisiana
Docket No. 148939

Honorable Christopher J. Boudreaux, Judge Presiding

\* \* \* \* \* \*

| | |
|---|---|
| Camille Saltz Babin<br>Houma, Louisiana | Counsel for Plaintiff/Appellee<br>Jamie Landry |
| Mark D. Plaisance<br>Marcus J. Plaisance<br>Prairieville, Louisiana | Counsel for Defendant/Appellant<br>Stephen Lucas |

\* \* \* \* \* \*

**BEFORE:  McCLENDON, WELCH, AND LANIER, JJ.**

**McCLENDON, J.**

In this case granting a permanent order of protection, the defendant appeals the judgment of the trial court in favor of the plaintiff. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On December 1, 2023, Jamie Landry, on behalf of herself and her two minor daughters, filed a Petition for Protective Order from Stalking.[1] Therein, she alleged that her neighbor, Stephen Lucas, stalked and harassed her and her children on several occasions. Mrs. Landry averred that on November 30, 2023, her seventeen-year-old daughter, G.L., was driving home from school when G.L. noticed that Mr. Lucas slowed down to merge into the right lane to get behind her. Once in her subdivision, Mr. Lucas got closer to her at each stop sign on the way to her home. G.L. told her mother that, at the last stop sign, Mr. Lucas was so close to G.L.'s vehicle that she thought that he would hit the back of her car. Mrs. Landry stated that G.L. then saw Mr. Lucas stick his arm out of the window and wave his middle finger at her. The incident was reported to the police. Mrs. Landry also stated that on October 5, 2023, when both of her daughters were going home from school, at the last stop sign before their home, Mr. Lucas was standing in his yard harassing them and sticking his middle finger at them.

Mrs. Landry additionally set forth that she was fearful as to what would happen in the future, stating that Mr. Lucas had some obsession with her husband beginning in May of 2016 when Mr. Lucas went to the Landrys' home during the night and tried to push his way in. Mrs. Landry continued that on April 16, 2018, at 10:50 p.m., Mr. Lucas was in their yard "messing with some brick columns" and that on the afternoon of September 24, 2020, Mrs. Landry and her daughters were passing by Mr. Lucas's home on the way home from school when Mr. Lucas started screaming and yelling at them and sticking up his middle finger. These incidents were reported to the police.

Mrs. Landry further alleged that Mr. Lucas was now starting to target her and her daughters. She stated that she was scared to pass in front of his house either leaving or

---

[1] Mrs. Landry's daughter, G.L., was seventeen years old and her daughter, M.L., was fifteen years old when Mrs. Landry requested the protective order, and we will refer to them by their initials. See LSA-R.S. 46:1844(W). However, we note that G.L. turned eighteen years old on March 30, 2024.

returning home, but that she had no other way of getting to and from her home without passing his home.

Mrs. Landry asserted that she has been in her residence since 2009, and there were no problems until Mr. Lucas moved into the neighborhood; that Mr. Lucas has threatened harm to her husband on several occasions; that Mr. Lucas was constantly videotaping her family when they passed by Mr. Lucas's house; that she was afraid for her life and her children's lives; and that she believed that Mr. Lucas was trying to get to her husband by targeting her and her children. Mrs. Landry concluded by stating that, if needed, she would allow her daughters to testify regarding what has happened to them.

The trial court set the matter for hearing on December 11, 2023. On December 11, 2023, the matter was continued to December 27, 2023. The trial court also set for hearing on December 27, 2023, the request for a protective order from stalking by Sherry Lucas, Mr. Lucas's wife, against Jeremy Landry, Mrs. Landry's husband.[2] The trial court consolidated the two matters for the hearing.

Following the hearing, during which testimony was heard and evidence offered as to both requests, the trial court gave oral reasons for judgment. Regarding the matter before us, the trial court found multiple instances by Mr. Lucas directed to Mrs. Landry and her daughters, entitling them to a permanent order of protection. The trial court stated:

> The Court has heard enough, and I've heard – I've stated clearly in the previous hearings that we have two - - two men, two grown men, who are carrying on a feud; and, this Court expressed its severe concern at the last hearings that it would overflow and eventually affect the families – of both men. Well, it has done so.
>
> The Court – finds that – that both – Mr. – Mr. Landry and – Mr. Lucas need protective orders issued against them, and the Court's [going to] issue protective orders against both of them.

The same day, the trial court issued a Uniform Abuse Prevention Order pursuant to LSA-R.S. 46:2171, *et seq.*, pertaining to non-intimate stalking by an acquaintance.[3] In

---

[2] We note that the trial court issued a protective order against Mr. Landry, and that judgment is the subject of a separate appeal pending before this court. See **Lucas v. Landry**, 2024-0447 (La.App. 1 Cir. --/--/--), ___ So.3d ___.

[3] Louisiana law requires that trial courts use a uniform form for the issuance of any protective or restraining order, called the "Uniform Abuse Prevention Order." See LSA-R.S. 46:2136.2(C); **Mason v. Thompson**, 2023-0730 (La.App. 1 Cir. 2/1/24), 2024 WL 446043, *3 (unpublished), writ denied, 2024-00273 (La.

accordance with the protective order, Mr. Lucas was prohibited from abusing, harassing, assaulting, stalking, following, tracking, monitoring, or threatening Mrs. Landry and her daughters in any manner; contacting Mrs. Landry and her daughters personally, through a third party, or via public posting, by any means, including written, telephone, or electronic (text, email, messaging, or social media) communication without the express written permission of the trial court; going within one hundred feet of Mrs. Landry and her daughters without the express written permission of the trial court; and going within one hundred feet of the Landrys' residence. The protective order was signed by the trial court, as well as by Mrs. Landry and by Mr. Lucas, who were given copies of the signed order at the hearing.

Mr. Lucas now appeals, asserting that the trial court erred in issuing a permanent protective order against him without evidence that he stalked or harassed the Landry family.

## LAW

In enacting the Protection from Stalking Act (the Act), LSA-R.S. 46:2171, *et seq.*, the legislature intended to provide a civil remedy for victims of stalking that would afford the victim immediate and easily accessible protection.[4] See LSA-R.S. 46:2171. Under the Act, "stalking" means any act that would constitute the crime of stalking under LSA-R.S. 14:40.2 or cyberstalking under LSA-R.S. 14:40.3. LSA-R.S. 46:2172. However, despite the Act's reference to these criminal stalking statutes, petitions for protection from stalking are not criminal proceedings. Rather, the sole relevance of the criminal stalking statutes in the context of a petition filed under the Act is to provide the definition

---

4/23/24), 383 So.3d 607. We note that although LSA-R.S. 46:2136.2 was amended by Acts 2023, No. 309, §1, eff. Aug. 1, 2024, subsection (C) of LSA-R.S. 46:2136.2 was not amended.

[4] Louisiana Revised Statutes 46:2171 provides:

> The legislature hereby finds and declares that there is a present and growing need to develop innovative strategies and services which will reduce and treat the trauma of stranger and acquaintance stalking. The nature of stalking allegations are sometimes not easily substantiated to meet the prosecution's burden of proving the case beyond a reasonable doubt, and victims of stalking are left without protection. Orders of protection are a proven deterrent that can protect victims of stalking from further victimization; however, many victims are forced to pursue civil orders of protection through ordinary process, often unrepresented, rather than through a shortened, summary proceeding. Additionally, victims of stalking are not always aware of the vast resources available to assist them in recovering from the trauma associated with being a victim of stalking. It is the intent of the legislature to provide a civil remedy for victims of stalking that will afford the victim immediate and easily accessible protection.

of stalking. **Raymond v. Lasserre**, 2022-0793 (La.App. 1 Cir. 3/6/23), 368 So.3d 82, 87-88, <u>writ denied</u>, 2023-00893 (La. 10/31/23), 372 So.3d 335.

Pertinent to this matter is LSA-R.S. 14:40.2(A), which defines the offense of stalking, as follows:

> Stalking is the intentional and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress. Stalking shall include but not be limited to the intentional and repeated uninvited presence of the perpetrator at another person's home, workplace, school, or any place which would cause a reasonable person to be alarmed, or to suffer emotional distress as a result of verbal, written, or behaviorally implied threats of death, bodily injury, sexual assault, kidnapping, or any other statutory criminal act to himself or any member of his family or any person with whom he is acquainted.

At a hearing on a protective order, the petitioner must prove the allegations by a preponderance of the evidence. **Raymond**, 368 So.3d at 88. Proof is sufficient to constitute a preponderance of the evidence, for the purposes of a protective order, when the entirety of the evidence, both direct and circumstantial, shows that the fact sought to be proved is more probable than not. **Id.**

A trial court's decision to issue or deny a protective order is reversible only upon a showing of an abuse of discretion. Additionally, the trial court sitting as a trier of fact is in the best position to evaluate the demeanor of the witnesses, and its credibility determinations will not be disturbed on appeal absent manifest error. **Raymond**, 368 So.3d at 88.

### DISCUSSION

In this appeal, Mr. Lucas argues that Mrs. Landry failed to show 1) that she or her daughters were alarmed or suffered emotional distress; 2) that Mr. Lucas committed a series or recurring series of acts; or 3) that she proved her allegations by a preponderance of the evidence. Therefore, according to Mr. Lucas, the trial court erred in issuing a permanent protective order against him.

Initially, Mr. Lucas contends that, while possibly rude and offensive, raising his middle finger at Mrs. Landry and her daughters is constitutionally protected free speech and cannot be harassment that would cause substantial emotional distress requiring medical treatment. Although Mr. Lucas argues that Mrs. Landry did not prove substantial emotional distress that required medical treatment, LSA-R.S. 14:40.2(A) does not require

5

*substantial* emotional distress or medical treatment. Stalking is the intentional and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress. LSA-R.S. 14:40.2(A). Proving that a reasonable person would be alarmed or suffer emotional distress is sufficient under the statute.

Mr. Lucas also asserts that Mrs. Landry failed to establish that he engaged in a recurring pattern of following to harass or stalk, suggesting that Mrs. Landry used the single November 30, 2023 incident to support her request for the protective order. However, it is clear that Mrs. Landry provided the November 23, 2023 incident to describe the latest example of Mr. Lucas's following and harassing that would cause a reasonable person to feel alarmed or to suffer emotional distress. Mrs. Landry and G.L. both testified regarding other instances of following and harassing by Mr. Lucas.

At the hearing for the protective order, G.L. testified that she recently began driving her father's company car, a Tahoe with tinted windows. The Tahoe also had a personalized license plate, containing the name of her father's contracting company, making it a distinctive vehicle. G.L. described the November 30, 2023 incident when Mr. Lucas stopped at each stop sign getting closer and closer to her. She testified that when she got home, she called her father and told him what happened because she was scared. G.L. also talked about other incidences where Mr. Lucas followed her, recorded her, pointed his middle finger at her, or just stood in the street. G.L. testified that these incidents caused her to feel scared, intimidated, and threatened.

Mrs. Landry testified at the hearing that she and her children do not feel secure. She stated that on multiple occasions, Mr. Lucas stood in his yard, screaming and yelling at her, when she passed by in her vehicle. She also stated that, on multiple occasions, when she would get to the stop sign by his house, he would raise his middle finger and videotape her family when she would pass by.[5] Mrs. Landry testified that she felt harassed and that Mr. Lucas was attacking her and her family.[6]

---

[5] We note that Mrs. Landry also referred to an earlier protective order that had been issued against Mr. Lucas, which Mr. Lucas acknowledged. However, the earlier order is not part of this record.

[6] Mrs. Landry further testified that in order to protect herself and her family, she and her husband have constructed a fence around their six-acre property, put up security cameras, and acquired trained German Shepherd dogs.

In its oral reasons, the trial court found multiple acts by Mr. Lucas directed to Mrs. Landry and her daughters. When talking about the latest incident on November 30, 2023, the trial court stated:

> But, clearly – clearly, Mr. [Lucas's] actions on that day clearly was another act of stalking. You were filming. You were following the vehicle. You ... testified in your own ... words ... that it's more than coincidence that their vehicles are constantly behind you, yet you're behind them. It ... just so happens that it was a young girl ... who was fearful.
>
> It's ... just gone too far. It's spilling over. It's affecting the families.

After carefully reviewing the record, we find that the trial court did not abuse its discretion in finding that Mrs. Landry established by a preponderance of the evidence that a protective order was warranted in this case. The trial court weighed the evidence and the credibility of the witnesses, referring to the long-standing and ongoing dispute between Mr. Lucas and Mr. Landry, and found that Mrs. Landry was entitled to a permanent protective order on behalf of herself and her daughters. We find that the trial court did not err in making its credibility determinations and did not abuse its discretion in issuing the Uniform Abuse Prevention Order.[7]

## CONCLUSION

For the foregoing reasons, we affirm the trial court's December 27, 2023 permanent prevention order. Costs of this appeal are assessed to Stephen Lucas.

**AFFIRMED.**

---

[7] We also find the case of **State v. Young**, 96-2079 (La.App. 1 Cir. 5/15/98), 712 So.2d 273, writ denied, 98-1598 (La. 2/5/99), 737 So.2d 740, cited by Mr. Lucas to be distinguishable, as it involved a criminal conviction for stalking.